UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA            PLAINTIFF

vs.            CRIMINAL ACTION NO.: 3:18CR-171-DJH

JAMES CARROLL            DEFENDANT

### UNITED STATES' PRETRIAL MEMORANDUM
*Filed Electronically*

The United States of America, by counsel, Assistant United States Attorney Thomas W. Dyke, submits this Pretrial Memorandum to assist the Court in presiding over the trial of the Indictment in this case.

### A. STATUTES INVOLVED AND ELEMENTS OF THE OFFENSES

### COUNT 1: 18 U.S.C. § 922(g)(1)

Count 1 of the Indictment charges the defendant under Title 18, United States Code, Section 922(g)(1). The elements of that offense are as follows:

First: That the defendant knowingly possessed a firearm, and;

Second: At the time the defendant possessed the firearm, he had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, and;

Third: The firearm possessed by the defendant had traveled in interstate commerce prior to being in his possession.

### B. STATEMENT OF UNDISPUTED AND DISPUTED FACTS

Counsel for the United States expects that the evidence introduced by the United States will establish the following facts:[1] Sometime during the month of August, 2018, a building belonging to a former federally-licensed firearms dealer ("FFL") located at 13303 Dixie

---

[1] The United States does not know which facts alleged by the United States will be disputed by the defendant.

Highway was burglarized. The FFL had firearms and other property stored in the building. The perpetrators stole a large number of firearms over a period of several days. After the burglary was discovered, agents from the bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and detectives from Louisville Metro Police Department ("LMPD") began to investigate. Some of the stolen firearms have been recovered, but many have not.

On October 4, 2018, ATF agents received information that the defendant and at least two other individuals were attempting to remove several firearms stolen in the burglary from a residence at 13304 Ashlawn Drive, Louisville, Kentucky. This residence is a very short distance across the railroad tracks from the building that the firearms were stolen from, and LMPD detectives had visited the residence previously in the course of investigating the burglary. Since the ATF agents were responding from their office, they requested assistance from an LMPD detective who was able to respond to the area quickly to investigate.

The LMPD detective conducted surveillance on the residence and saw a man (later identified as the defendant, James Carroll) walk over to a three-wheeled motorcycle parked in the driveway, open the rear storage compartment of the motorcycle, then return to the residence. Once ATF agents arrived on the scene, they, along with an LMPD detective received consent to search the residence. During the search of the residence, the defendant, James Carroll, was located and identified as the man who had accessed the rear storage compartment of the motorcycle. The defendant gave ATF agents consent to look inside the storage compartment of the motorcycle. Inside the rear storage compartment of the motorcycle, the agents discovered the firearm specified in the indictment.

Carroll was arrested and charged with possession of a firearm by a convicted felon. After he was arrested, the defendant was transported to the LMPD Third Division office, where he was

advised of his Miranda rights. After acknowledging his rights and agreeing to speak with the investigators, Carroll stated that he was aware that the building owned by the FFL had been broken into and that firearms had been stolen. Carroll provided the detectives with the names of the individuals who brought stolen firearms to the house at 13304 Ashlawn. According to Carroll, he saw 100-150 stolen guns but estimates that there could be close to 1000 guns stolen based at the rate the burglars were bringing guns over to the residence on Ashlawn and how word spread about the burglary.

Carroll said that he handled three of the stolen long rifles out of curiosity. One was a 300 Winchester Magnum with a laminated stock and scope with a sunshade on it, one was a 7mm magnum, and the last was a WWII-era Mauser.

Carroll said one of the perpetrators tried to get him to sell some of the guns on more than one occasion, and that he told him he would just to "get him off [his] ass", but he never did. One particular time one of the perpetrators left pistols and long guns for him to sell, but he did not sell them.

When asked about the firearms found inside the storage compartment of the motorcycle, Carroll said he was told there was a "blown up gun" in there. Carroll said he took the motorcycle around the block a couple times because he was working on it and when he went outside to open the trunk, he saw a black bag that said "Midwest" or "Midsouth" on it. Carroll said he knew the firearm must have been in that bag and he closed the trunk and went in the house because he did not want anything to do with it.

## C. UNRESOLVED SUBSTANTIVE ISSUE OF LAW

The United States is not aware of any unresolved issues of law at this time.

D.  EVIDENTIARY ISSUES

The United States will present testimony from an ATF Special Agent relating to the firearm involved in this case. The United States intends to introduce testimony that the firearm specified in the Indictment traveled in interstate commerce before being recovered in the Commonwealth of Kentucky, and that it meets the definition of a "firearm" as defined under federal law. Evidence from a government agent that the particular firearm was not manufactured in the state where the defendant possessed it has been held sufficient to establish the government's burden of proving that a firearm traveled in interstate commerce. *See United States v. Corey*, 207 F.3d 84, 88-91 (1st Cir. 2000) (no error to admit testimony of ATF agent that the firearm was not manufactured in state of possession, as the expert testimony was based on the agent's experience, ATF records, and manuals, and conversations with manufacturer's historian).

The United States must prove, as an element of the offense charged in Count 1 of the Indictment, that the defendant was convicted of a felony offense prior to possessing a firearm. The United States is prepared to accept a stipulation from the defendant pursuant to *Old Chief v. United States*, 519 U.S. 172, 174 (1997) that at the time of the offense, he had been convicted of a crime punishable by imprisonment for a term in excess of one year.  As such, it would not be necessary for the United States to introduce evidence of the nature of that offense.

E.  ANTICIPATED TRIAL PROBLEMS

The United States does not foresee any unusual problems associated with the trial of the case.

F.  PROPOSED SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS

The United States will tender substantive and special jury instructions along with this Pretrial Memorandum.

4

## G.  PROPOSED VOIR DIRE QUESTIONS

The United States will tender Proposed Voir Dire Questions along with this Pretrial Memorandum.

        Respectfully submitted,

        RUSSELL M. COLEMAN
        United States Attorney


        /S/Thomas W. Dyke
        Assistant United States Attorney
        717 West Broadway
        Louisville, Kentucky 40202
        (502) 582-5911 (phone)
        (502) 582-5912 (fax)


## CERTIFICATE OF SERVICE

On March 5, 2019, I electronically filed this document through the ECF system, which will send a notice of electronic filing to: Hon. Aubrey Williams, Counsel of record for the defendant.

        s/ Thomas W. Dyke
        Assistant United States Attorney