UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                    CRIMINAL ACTION NO. 3:18-CR-171-DJH

JAMES CARROLL                                                         DEFENDANT

UNITED STATES' NOTICE OF INTENT TO INTRODUCE EVIDENCE
*Electronically Filed*

Comes the United States, by counsel, Assistant United States Attorney Thomas W. Dyke, and for the United States notice of intent to introduce evidence, states as follows:

The Court has ordered that the United States give notice of evidence it intends to introduce under Federal Rule of Evidence 404(b) 14 days prior to trial. For the reasons stated below, the United States argues that the evidence referred to is admissible under the Federal Rules of Evidence.

BACKGROUND

Sometime during the month of August, 2018, a building belonging to a former federally-licensed firearms dealer ("FFL") located at 13303 Dixie Highway was burglarized. The FFL had firearms and other property stored in the building. The perpetrators stole a large number of firearms over a period of several days. After the burglary was discovered, agents from the bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and detectives from Louisville Metro Police Department ("LMPD") began to investigate. Some of the stolen firearms have been recovered, but many have not.

On October 4, 2018, ATF agents received information that the defendant and at least two other individuals were attempting to remove several firearms stolen in the burglary from a residence at 13304 Ashlawn Drive, Louisville, Kentucky.   This residence is a very short distance across the railroad tracks from the building that the firearms were stolen from, and LMPD detectives had visited the residence previously in the course of investigating the burglary. Since the ATF agents were responding from their office, they requested assistance from an LMPD detective who was able to respond to the area quickly to investigate.

The LMPD detective conducted surveillance on the residence and saw a man (later identified as the defendant, James Carroll) walk over to a three-wheeled motorcycle parked in the driveway, open the rear storage compartment of the motorcycle, then return to the residence.  Once ATF agents arrived on the scene, they, along with an LMPD detective received consent to search the residence.   During the search of the residence, the defendant, James Carroll, was located and identified as the man who had accessed the rear storage compartment of the motorcycle. The defendant gave ATF agents consent to look inside the storage compartment of the motorcycle. Inside the rear storage compartment of the motorcycle, the agents discovered the firearm specified in the indictment.

Carroll was arrested and charged with possession of a firearm by a convicted felon. After he was arrested, the defendant was transported to the LMPD Third Division office, where he was advised of his Miranda rights.   After acknowledging his rights and agreeing to speak with the investigators, Carroll stated that he was aware that the building owned by the FFL had been broken into and that firearms had been stolen.   Carroll provided the detectives with the names of the individuals who brought stolen firearms to the house at 13304 Ashlawn.

According to Carroll, he saw 100-150 stolen guns but estimates that there could be close to 1000 guns stolen based at the rate the burglars were bringing guns over to the residence on Ashlawn and how word spread about the burglary. According to Carroll, he recognized the make and model of some of the firearms because he shoots on a regular basis.

Carroll said that he handled three of the stolen long rifles out of curiosity. One was a 300 Winchester Magnum with a laminated stock and scope with a sunshade on it, one was a 7mm magnum, and the last was a WWII-era Mauser.

Carroll said one of the perpetrators tried to get him to sell some of the guns on more than one occasion, and that he told him he would just to "get him off [his] ass", but he never did. One particular time one of the perpetrators left pistols and long guns for him to sell, but he did not sell them.

When asked about the firearms found inside the storage compartment of the motorcycle, Carroll said he was told there was a "blown up gun" in there. Carroll said he took the motorcycle around the block a couple times because he was working on it and when he went outside to open the trunk, he saw a black bag that said "Midwest" or "Midsouth" on it. Carroll said he knew the firearm must have been in that bag and he closed the trunk and went in the house because he did not want anything to do with it.

## ARGUMENT

The United States intends to introduce evidence of the defendant's knowledge of the burglary, as well as his admissions that he shoots firearms, handled firearms from the burglary, and agreed to sell some of the stolen firearms.   Character evidence and other evidence of crimes, wrongs, or prior acts are generally inadmissible to prove a defendant's propensity towards committing an

alleged offense. *See* Fed. R. Evid. 404. Pursuant to Federal Rule of Evidence 404(b)(2), however, evidence of prior acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Prior to admitting Rule 404(b) evidence, the district court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in Rule 404(b); and (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403." *United States v. Allen*, 619 F.3d 518, 523, (6th Cir. 2010).

Testimony relating to Carroll's possession of firearms around the time of the offense is admissible for a proper purpose, specifically, the defendant's knowledge that the firearm specified in the Indictment, and that he intended to possess the firearm. The evidence relating to Carroll's prior firearm possession was temporally and spatially related to his possession of the firearm on October 4, 2018. A limiting instruction can be given to the jury in relation to the evidence of Carroll's prior possession of firearms to further protect him from the occurrence of any unfair prejudice on account of the evidentiary admission.

CONCLUSION

The Court should permit the introduction of the evidence relating to the defendant's prior possession of firearms.

Respectfully submitted,

RUSSELL M. COLEMAN
United States Attorney

/S/Thomas W. Dyke
Thomas W. Dyke
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5911 (TEL)
(502) 582-5912 (FAX)

CERTIFICATE OF SERVICE

On March 11, 2019, I electronically filed this document through the ECF system, which will send a notice of electronic filing to Counsel of record.

s/ Thomas W. Dyke
Assistant United States Attorney