IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | Criminal Action No. 3: 18-CR-171- |
| | ) | |
| JAMES CARROLL | ) | |
| | ) | |
| DEFENDANT | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**

**STATEMENT OF FACTS**

The government alleges in the one count indictment that Defendant James Carroll, having been convicted of flagrant non-support in Jefferson Circuit Court, an offense for which he could have been sentenced to one year or more, of possessing a firearm in violation of 18 United States Code 922 (g)(1) and 924(a)(2), i.e., "Possession of a firearm by a prohibited person." The following essential facts are gleaned from discovery provided by the government, which will be referred to as Narrative number 1, Narrative number 2, which appear to be identical, Narrative number 3, and the testimony of Detective Johnathan Herring:

**Narrative No. 1**(Exhibit 1 attached hereto)

On October 3, 2018, ATF Special Agent Alexander Sanchez and LMPD Detective Jonathan Herring interviewed James Carroll regarding the burglary of 13303 Dixie Highway. Carroll told them that Ashlynn Marcum and Richard Roberts came over (sic) in the middle of the night with guns approximately a month or two ago. "They told Carroll that they had the stolen guns at which point he repeatedly told them to leave." Carroll recognized the type of some of the guns because he is an avid shooter. They came back an hour later with what he assumed were more guns (emphasis mine). "Later in the interview, Carroll said that he saw 100-150 stolen guns but estimates that there could be close to 100 guns stolen based at the rate they were bringing guns over and how word spread about Biff's warehouse."

Carroll stated that he has seen Ashlynn Marcum and Roberts bring 100-150 firearms to 13304 Ashlawn Drive and he knows they have more.  On the second or third night, he saw Josh also bringing guns to the house.  Carroll said that since "Pops," Greg Whitaker the homeowner, would not make them leave, after the third day he took his belongings and left the residence.

Carroll stated he was at the residence on the day of his arrest because Kim Marcum's mother, "Robin Marcum, stole money from Greg.  When asked about the firearms found inside the storage compartment of the motorcycle, Carroll said he was told there was a "blown up gun" in there. Carroll said he took the motorcycle around the block a couple of times because he was working on it and when he went outside to open the trunk, he saw a black that said "Midwest or Midsouth" on it.  Carroll said he knew the firearm must have been in that bag and he closed the trunk and went in the house because he did not want anything to do with it.

**Narrative No. 2** (Exhibit 2 attached hereto)

1. On October 3, 2018, ATF Special Agent Jennifer Ockerman received information that James Carroll, Hope Green, and Richard Roberts were attempting to move stolen firearms from 13304 Ashlawn Drive, Louisville, KY (emphasis added).  SA Ockerman contacted SA Alexander Sanchez in order to coordinate the interdiction of any firearms leaving the residence.  SA Sanchez made contact with LMPD 3rd Division detectives and officers in order to coordinate surveillance efforts on the residence.

2. A short time later, Louisville Metro Police Department (LMPD) Detective Johnathan Herring set up surveillance on the residence and observed an individual later identified as James Carroll open the rear storage compartment of a motorcycle parked in the driveway.  A few minutes later, Hope Green left the residence and approach Det. Herring's vehicle.  Herring made contact with Green, who did not possess any firearms, and released her pending further investigation.

3. ATF SA Matthew Johnson and Det. Herring promptly made contact with the owner of the residence, Greg Whitaker, who consented to a search of his property.  During the search of the residence, James Carroll was located in a back bedroom of the residence and identified by Detective Herring as the individual who accessed the rear storage compartment of the motorcycle.  Roland Saylor was also present at the residence.  No firearms were located in the residence.

4. Carroll and Whitaker gave ATF SA Matthew Johnson and Detective Herring consent to look inside the storage compartments of the motorcycle.  Inside the rear storage compartment of the motorcycle, SA Johnson and SA Sanchez located a Cold Single Action Frontier Scout .22 caliber revolver bearing serial number 162642F, and a Ruger Blackhawk .44 caliber revolver bearing serial number 2511.  Carroll had made mention of the fact that a "blown up" gun would be in the storage compartment of the

      motorcycle, and the Ruger Blackhawk revolver found had significant damage to the cylinder and frame from what appeared to be a catastrophic failure.

5. Carroll was taken into custody for violating 18 USC 922(g)(1) and a criminal complaint was drafted by Special Agent Sanchez.

The Assistant United States Attorney in charge of this case states in his Pretrial Memorandum as follows: "On October [4], 2018, ATF agents received information that the defendant and at least two other individuals were Attempting to remove several firearms stolen in the burglar from a residence at 13304 Ashlawn Drive, Louisville, Kentucky." (Plaintiff's Pretrial Memorandum at 2).

In addition to the foregoing narratives, authored by Special Agent Sanchez, and government counsel's confirmation of same, Detective Johnathan Herring testified at the Defendant's preliminary and detention hearing on October 9, 2018.  He gave the following account of the events that led to the Defendant's arrest:

> Q. Let's go back.  Let's go to October 3d of 2018, the date that Mr. Carroll was arrested, and talk about that.  Did you get a call from Detective Ockerman on that date?
>
> A. Yes, Sir. I did, I believe around 4:15 in the afternoon.
>
> Q. Okay.  And what did – is it Jennifer Ockerman?  Is that her name?
>
> A. Yes, sir.
>
> Q. What did she tell you and as a result of that what did you-all do?
>
> A. She told me that they had received a tip that there were several people inside of a known location we've been dealing with in result of this investigation at 13304 Ashlawn Drive, and that they were actively hiding guns in the attic of that residence.  And she was asking my assistance to try and get some patrol officers to that location as quickly as possible.

(Transcript of proceedings; 10/09/2018 at 6; **attached hereto as Exhibit 4**)

> Q. Okay. So after you got there – let's take it from the time you got there.  What Happened when you got there? ……………………………………………..

  A. And I knew at that point nobody was watching the house, so I went and took over Surveillance of the house………………………………………………………………...
  Q. Okay. Was it still daylight at this time?
  A. It was.
  Q Did you have an unobstructed view of the house? Could you see what was going on?
  A. Yes, sir.
  Q. All right. Okay. So as you were sitting there, tell us what happened, please.
  A. A short time after I was there, I saw a subject, who I later identified as Mr. Carroll, come out of the side door of the house. And there was a motorcycle parked in the driveway of that house. There was a trunk that I saw him open.
  Q. Okay.
  A. I could only – he had his back to me, so I could only see that he had opened the trunk and was standing in front of it, and then he went back into the house.

Id. at 11-10

   Detective Herring goes on to testify that after he and other police officers entered the house and began their search, he entered a bedroom where Carroll was and observed among a lot of clutter a lot of tools, screwdrivers, and knives. Without more, he placed Carroll in handcuffs. At the AUSA's urging, he said he placed him in handcuffs to secure him *Id.* at 14. In response to his questions, Carroll told him that the motorcycle belonged to a man named Cosmos, the man who had hired him to work on the bike. *Id*. at 16 (emphasis added).

   After going outside to search the motorcycle, Herring returned to the house and got a screwdriver and opened the storage compartment on the motorcycle and seized the gun that led to this indictment. *Id*. at 17. He stated that he did not arrest Carroll that evening, but stated that ATF Agent Sanchez arrested him. He did not say when the arrest occurred. *Id*. According to Carroll's taped interrogation by Agent Sanchez, he was Mirandized at 20:15 hours on October 3, 2018. It also appears that the taped interrogation occurred at either the LMPD station house or a site controlled by the federal government. It appears, therefore, that all of the transactions involving Detective Herring occurred at Greg Whitaker's residence. Furthermore, it does not

appear that Herring ever removed the handcuffs, which allegedly were placed on him for security purposes.

In none of the foregoing accounts leading to Carroll's arrest does the government identify the tipster. Furthermore, and more importantly, they neither state nor establish in any manner that the tipster was a reliable tipster or a confidential informant who had demonstrated his or her reliability and veracity in the past.

Moreover, it must not go unnoticed, according to Detective Herring's own testimony regarding his surveillance of the residence and his subsequent actions that other people were in the house during the episode involving the motorcycle at some time during that day. They included a female, who, according to Carroll's statement, alerted him that the motorcycle's compartment contained a blown up gun. They also included the apparent owner of the motorcycle, Cosmos, who rode it to the Ashlawn address, and during that time solicited Carroll's expertise with motorcycles to correct the problem that he was having with the motorcycle.

It is not irrelevant; indeed, it is more than curious that the motorcycle had allegedly been stolen from a lady who inexplicably had not reported it stolen *Id*. at 18.

Furthermore, Detective Herring did not and could not deny that Carroll walked to the Ashlawn address and, therefore, did not ride there on the motorcycle. *Id*. at 41. Furthermore, Detective Herring testified that many people were seen entering and leaving the house that day, but none of them was arrested, including the woman whom he intercepted in the field after she left the house.

It is even more significant that neither the blown up gun nor the other gun for which Carroll was indicted was among the guns stolen from Biff's warehouse.

**Narrative No. 3**

Special Agent Sanchez states that ATF SA Matthew Johnson and Detective Herring obtained consent from Carroll and Whitaker to search the motorcycle (¶ 4).  Any such consent is of no effect as relates to Carroll because, as the foregoing facts clearly show, he had no possessory interest, actual, constructive, or otherwise, in the vehicle.

It is respectfully submitted that based on the foregoing facts, the evidence seized from the storage compartment must be suppressed on the grounds that the officers lacked probable cause to arrest Carroll

### ARGUMENT

### A.  The Agents Arrested Carroll in Violation of the Fourth Amendment to the United States Constitution In that it was Effected without Probable Cause.

The Fourth Amendment to the United States Constitution states,

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The Sixth Circuit held in *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003), the Sixth Circuit states that its precedent establish what is required to establish probable cause based on hearsay evidence provided by confidential informants and anonymous tipsters.  For hearsay from a confidential informant, it is sufficient if the prior track record adequately establishes credibility.  The Court states that anonymous tipsters, however, demand more stringent scrutiny of their veracity, reliability, and basis of knowledge.

The Court quotes the Supreme Court's explanation in *Florida v. J.L.* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed. 254 (2000) where it held that in an investigatory stop context"

'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" (quoting *Alabama v. White,* 496 U.S. 325, 327, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Significantly, the Court states that central to the Supreme Court's holding was the notion that although the anonymous tipster provided accurate information about the location and appearance of concealed criminal activity (a juvenile with a firearm), the tip had to "be reliable in its assertion of illegality, not just in its tendency to identify a determinative person." *Id*. at 272 120 S.Ct. 1375. The Court goes on to state that based on that principle, the Supreme Court affirmed the suppression of evidence obtained from an investigatory stop where the criminal activity component of the anonymous tip was not corroborated. *Id.*

Additionally, the Sixth Circuit points out that it reached a similar result in *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993), where it concluded that the persuasive value of an anonymous tip sparse in relevant detail and wholly uncorroborated was too low to establish probable cause. *Id. at 1362*; see also *United States v. Allen, 211 F*.3d at 976 (approving of the *Leake* holding).

It is beyond cavil that the evidence provided by the anonymous tipster at bar does not even remotely satisfy the criteria required under the Fourth Amendment for the government agents to arrest James Carroll. Not only did the government agents not discover any evidence connecting Carroll with the Biff's burglary, they did not even connect the guns in the motorcycle with the Biff's burglary. Compare this with *Florida v. J.L.*, which I am compelled to repeat emphasis:

> . . . although the anonymous tipster provided accurate information about the location and appearance of concealed criminal activity (a juvenile with a firearm), the tip had to be reliable in its assertion of illegality, not just in its tendency to identify a determinative person. *Id.* at 272.

In the instant case, not only was there no corroboration, despite the surveillance, search of the home, interrogation of Greg Whitaker, the stop of the lady in the field, the traffic stop of an unidentified person who had left the house, the tipster provided no information about the gun in the motorcycle, which, by the way, was certainly not found in the attic of Whitaker's house.

Accordingly, the gun seized from the motorcycle must respectfully be suppressed.

Respectfully Submitted,

/ s / Aubrey Williams
AUBREY WILLIAMS
One Riverfront Plaza,
Suite 1708
401 West Main Street
Louisville, KY 40201
(502) 581-1088
FAX: 581-0595
E:aubreyw8243@bellsouth.net
**Counsel for the Defendant**

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk via the Court's CM/ECF system on this 13th day of March, 2019, which will send electronic notification of such to the Assistant United States Attorney listed below on even date:

Hon. Thomas W. Dyke
717 West Broadway
Louisville, KY 40202
*Counsel for Plaintiff, USA*

/ s / Aubrey Williams